Petition for Naturalization of Alejandro Florentino MUNOZ.

No. 130093.

United States District Court
N. D. California, S. D.

Oct. 22, 1957.

GOODMAN, District Judge.

Petitioner seeks to avail himself of the summary naturalization procedure provided by 8 U.S.C.A. § 1440 (Section 329, Immigration and Nationality Act of 1952, 66 Stat. 250). Section 1440 authorizes the naturalization, without the usual period of residence in the United States, of any person who has served honorably in an active-duty status in the armed forces of the United States during the period September 1, 1939, through December 31, 1946, and who has subsequently been admitted for permanent residence.

■ Petitioner was granted admission for permanent residence by private law passed August 1, 1955, 69 Stat. A94. He was a member of a recognized guerrilla element of the Philippine Commonwealth Army from May 1, 1945, to November 7, 1945, while the Philippine Army was in the service of the armed forces of the United States. This constituted active duty status in the armed forces of the United States. See Petition of Agustin, D.C.1945, 62 F.Supp. 832.[1]

But the Naturalization Service, in opposing the petition, contends that the Congress "took away" petitioner's right to summary naturalization, to which he would otherwise be entitled, in 1946, when it passed Public Law 301, 79th Congress, 60 Stat. 14.

Public Law 301, 79th Congress, was an appropriation act. In appropriating $200,000,000 for the Army of the Philippines, the Congress added the proviso that:

"service in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the armed forces of the United

Norman Stiller, San Francisco, Cal., for petitioner.

Daniel Lyons, San Francisco, Cal., for the Government Agency.

1. Neither sec. 329 of the 1952 Act, nor its predecessor statute Section 701 of the 1940 Act, required "membership in the U. S. Army," as a condition for naturalization, but only "active duty service in the armed forces of the United States." Hence Logronio v. U. S., 1955, 133 F. Supp. 395, 132 Ct.Cl. 596, cited by the Naturalization Examiner, is not apropos. And furthermore Logoronio was concerned only with service men's financial benefits and not with naturalization rights.

States pursuant to the military order of the President of the United States dated July 26, 1941, shall not be deemed to be or to have been service in the military or naval forces of the United States or any component thereof for the purpose of any law of the United States conferring rights, privileges, or benefits upon any person by reason of the service of such person or the service of any other person in the military or naval forces of the United States or any component thereof, except benefits under (1) the National Service Life Insurance Act of 1940, as amended, and under contracts heretofore entered into, and (2) laws administered by the Veterans' Administration providing for the payment of pensions on account of service-connected disability or death."

The proceedings of the 79th Congress do not reveal whether Public Law 301 was intended to exclude Philippine Army personnel merely from direct financial benefits available to veterans or also from such collateral rights as summary naturalization. But, the next year Public Law 301 was amended (61 Stat. 455), to specify that Philippine Army personnel should have the benefits provided by the Missing Persons Act, 56 Stat. 143, 50 U.S.C.A.Appendix, § 1001 et seq. The House Report on the amending bill states that from the best available information it is reasonably certain that Public Law 301, 79th Congress, was intended only to exclude Philippine Army personnel from such veterans' benefits as the GI bill of rights, terminal leave, hospitalization, and mustering-out pay and that its sweeping language was inadvertent and did not express the true intent of Congress. House Report 509, 80th Congress, 1947 U.S.Code Congressional Service, p. 1469.

■ Thus it appears that in enacting Public Law 301, the Congress had no thought of depriving Philippine Army personnel of the privileges of expeditious naturalization granted to *all persons* who served honorably in our armed forces. Certainly no reason has been suggested why the Congress should have desired to take this privilege *solely* from Philippine nationals whose exceptional service with the United States forces during World War II is common knowledge. It is reasonable to conclude that Public Law 301, 79th Congress (an appropriation Act), does not encompass rights and privileges accorded by the naturalization statutes.

There is an additional reason why Public Law 301 does not bar petitioner's immediate naturalization. The statute relied upon by petitioner is § 329 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1440, 66 Stat. 250. Section 403(b) of that Act, 8 U.S.C.A. § 1101 note, provides that "except as otherwise provided in section 405, all other laws, or parts of laws, in conflict or inconsistent with this Act are, to the extent of such conflict or inconsistency, repealed." Thus even if Public Law 301, 79th Congress, were interpreted to apply to rights and privileges accorded by the naturalization laws, it is, by virtue of section 403(b), supra, superceded by the provisions of Section 329 of the Immigration and Nationality Act of 1952 authorizing the summary naturalization of "any person" who served honorably in the armed forces of the United States during the specified period.

Petitioner is admitted to citizenship, upon taking the required oath.